Andrew L. Deutsch (AD 5782)
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY 10020
*Attorney for Plaintiff NYSE Group, Inc.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NYSE GROUP, INC., Plaintiff, -against- NEW YORK SHELL EXCHANGE, PATRICK GIORDANO, and WILLIAM HAYDE, Defendants. | Case No. __________ **COMPLAINT** **JURY TRIAL DEMANDED** |

Plaintiff NYSE Group, Inc. ("NYSE Group" or "Plaintiff"), by its attorneys, DLA Piper LLP (US), brings this action against defendants New York Shell Exchange ("Shell Exchange"), Patrick Giordano ("Giordano"), and William Hayde ("Hayde") (collectively, "Defendants") for injunctive relief and damages under the laws of the United States and the laws of the State of New York as follows:

## NATURE OF THE COMPLAINT

1. This is an action for the following: (a) infringement of registered trademarks in violation of 15 U.S.C. § 1114; (b) unfair competition in violation of 15 U.S.C. § 1125(a); (c) dilution under 15 U.S.C. § 1125(c); (d) cybersquatting under 15 U.S.C. § 1125(d); (e) trademark infringement and unfair competition under New York State common law; and (f) violation of New York General Business Law § 360-*l*.

## PARTIES

2. NYSE Group is a corporation, duly formed and existing under Delaware law, and has a corporate address at 11 Wall Street, New York, NY 10005.

3. Upon information and belief, Shell Exchange is an unincorporated business operating in New York with a principal place of business at 1730 62nd Street, Brooklyn, NY 11204.

4. Upon information and belief, Giordano is an individual and owner of Shell Exchange, and has an office at 1730 62nd Street, Brooklyn, NY 11204.

5. Upon information and belief, Hayde is an individual and owner of Shell Exchange, and has an office at 1730 62nd Street, Brooklyn, NY 11204.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the claims in this action under 28 U.S.C. §§ 1331 and 1338 because this action involves substantial claims by NYSE Group of trademark infringement, unfair competition, dilution, and cybersquatting arising under 15 U.S.C. §§ 1114 and 1125.

7. This Court has supplemental jurisdiction over the claims in this complaint that arise under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form a part of the same case or controversy and derive from a common nucleus of operative facts.

8. To the extent that Shell Exchange is an entity capable of being sued, this Court has personal jurisdiction over Shell Exchange by reason of (a) the fact that it is domiciled and has its headquarters in the State of New York, at 1730 62nd St., Brooklyn, NY; and (b) the

claims of this Complaint arise out of Shell Exchange's transaction of business within the State of New York.

9. This Court has personal jurisdiction over Giordano because (a) upon information and belief, he is domiciled in the State of New York; (b) his transaction of business through Shell Exchange that gives rise to the claims of this Complaint occurred in New York, and (c) he operates Shell Exchange from the latter's headquarters office at 1730 62nd Street, Brooklyn, NY 11204.

10. This Court has personal jurisdiction over Hayde because (a) upon information and belief, he is domiciled in the State of New York; (b) his transaction of business through Shell Exchange that gives rise to the claims of this Complaint occurred in New York; and (c) he operates Shell Exchange from the latter's headquarters office at 1730 62nd Street, Brooklyn, NY 11204.

11. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are deemed to reside in this district and to be subject to personal jurisdiction in this district at the time the action commenced.

12. Venue is also proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims of this Complaint herein occurred in this district.

## FACTS RELEVANT TO ALL CLAIMS

### NYSE Group's Operations and Valuable Marks

1. NYSE Group operates the oldest stock exchange in the United States and the best known exchange in the world: the New York Stock Exchange, founded in 1792. The New York Stock Exchange has been mentioned in many thousands of news stories about United States

stock trading and the economy, frequently by its initials "NYSE." Scenes of brokers on the floor of the NYSE and of newly listed companies ringing the opening bell at the NYSE are commonly used by news media to illustrate the day-to-day state of U.S. stock markets.

2. The New York Stock Exchange has grown into the world's largest stock exchange. It has a market capitalization in the trillions of dollars and an average daily trading value in the billions of dollars.

3. The New York Stock Exchange has been located at 11 Wall Street in New York City since at least 1922.

4. Through the New York Stock Exchange, NYSE Group provides the public with an organized forum for buying and selling securities. The New York Stock Exchange is a regulated central market that provides liquidity, fairness in pricing or auctioning, and management of risks through settlement, delivery, or clearing.

5. Over 2,000 companies have their primary listing on the New York Stock Exchange. Over one trillion shares of stock are traded annually on the New York Stock Exchange.

6. Since at least as early as 1863, and through the present date, NYSE Group (and its predecessors) have continuously and extensively used the trademarks NYSE and NEW YORK STOCK EXCHANGE in connection with conducting a securities exchange and providing other services connected therewith. Since at least as early as 1980, NYSE Group (and its predecessors) have continuously and extensively used the trademark N.Y. STOCK EXCHANGE in connection with conducting a securities exchange and providing other services connected therewith. For example, NYSE Group has continuously and extensively used the marks NYSE, NEW YORK STOCK EXCHANGE, and N.Y. STOCK EXCHANGE (collectively, the "NYSE

Marks") in marketing materials to bring buyers and sellers of publicly traded companies together.

7. In recognition of the value of the NYSE Marks, in which NYSE Group has substantial common law rights, NYSE Group (and its predecessors) sought and obtained (a) U.S. Trademark Registration No. 909,350 for NYSE; (b) U.S. Trademark Registration No. 924,870 for NEW YORK STOCK EXCHANGE; and (c) U.S. Trademark Registration No. 1,231,337 for N.Y. STOCK EXCHANGE (collectively, the "Registrations"). The Registrations are for "conducting a securities exchange and providing other services connected therewith." A true and correct copy of the Registrations are attached hereto as Exhibit A.

8. Each of the Registrations are valid and subsisting and are in full force and effect. The NYSE Marks have become incontestable by operation of law pursuant to 15 U.S.C. § 1065. Moreover, the Registrations constitute prima facie evidence of the validity of the NYSE Marks and Registrations, NYSE Group's ownership of the NYSE Marks, and its exclusive right to use the NYSE Marks.

9. In the more than 150 years since its predecessors' first use of NEW YORK STOCK EXCHANGE and NYSE, and the more than 35 years since its predecessors' first use of N.Y. STOCK EXCHANGE, NYSE Group (and its predecessors) have invested hundreds of millions of dollars, as well as other resources, in the promotion, advertising, and development of its business, and to create a primary association in the public's mind between the NYSE Marks and the services provided by NYSE Group, including exchange services. The NYSE Marks are prominently featured in NYSE Group's advertising, promotion, and marketing of its services. The NYSE Group owns the domain name www.nyse.com, among other similar URLs, through which it markets, promotes, and offers for sale its products and services, including exchange

services. The NYSE Group has received extensive fee revenue related to its exchange services offered in commerce in the United States, including in the State of New York, under the NYSE Marks.

10. As a result of NYSE Group's investments in the NYSE Marks, it has earned enormous goodwill and commercial recognition for the NYSE Marks. The NYSE Marks have come to mean and are understood by consumers throughout the United States as identifying and distinguishing NYSE Group's exchange services from those of its competitors.

11. The NYSE Marks are widely recognized by the general consuming public of the United States as a designation of origin of the services of NYSE Group, and are therefore "famous" within the meaning of 15 U.S.C. § 1125(c).

**Defendants' Infringing Activities**

12. Upon information and belief, Defendants, through Defendant Shell Exchange, provide an exchange for the purchase and sale of interests in businesses, including common stock.

13. Upon information and belief, on or about 2012, Defendants began to use the marks "NYSE," which is identical to NYSE Group's registered mark "NYSE," "New York Shell Exchange," a colorable imitation of NYSE Group's registered mark "NEW YORK STOCK EXCHANGE," and "NY Shell Exchange," a colorable imitation of NYSE Group's registered mark "N.Y. STOCK EXCHANGE," to identify exchange and exchange-type services, which are the same type of services offered by NYSE Group under the NYSE Marks. "NYSE," "New York Shell Exchange," and "NY Shell Exchange," as used by Defendants, are referred to herein as the "Infringing Marks."

14. Upon information and belief, Defendants first used the Infringing Marks in 2012, whereas NYSE Group's first use of "NYSE" and "NEW YORK STOCK EXCHANGE" dates from at least 1863, and its first use of "N.Y. STOCK EXCHANGE" dates from at least 1980.

15. Upon information and belief, Defendants' first use of the Infringing Marks occurred many years after the NYSE Marks had become famous within the meaning of 15 U.S.C. § 1125(c).

16. Upon information and belief, since 2012 and continuing through the date of this Complaint, Defendants have used the Infringing Marks to promote, advertise, and sell Defendants' services, with the intent or likely result of (a) confusing and deceiving potential consumers of exchange services into believing that Defendants' services emanate from, or are licensed, authorized, or endorsed by the NYSE Group; and (b) unfairly and unlawfully profiting from the enormous goodwill and commercial recognition enjoyed by the NYSE Marks.

17. Upon information and belief, Defendants have registered, used and continue to use domain names and email addresses that incorporate one or more Infringing Marks with the intent or likely result of (a) confusing and deceiving potential consumers of exchange services into believing that Defendants' services emanate from, or are licensed, authorized, or endorsed by the NYSE Group; and (b) unfairly and unlawfully profiting from the enormous goodwill and commercial recognition enjoyed by the NYSE Marks.

18. Upon information and belief, Defendants own and operate websites available at http://newyorkshellexchange.com and www.nyshellexchange.com (the "Shell Websites"). The URL www.nyshellexchange.com redirects to http://newyorkshellexchange.com. A true and correct copy of webpages from the Shell Websites are attached hereto as Exhibit B.

19. Upon information and belief, the Defendants created the Shell Websites on or about March 17, 2012.

20. Upon information and belief, Giordano is the Shell Websites' registrant, administrator, and technician. The listed contact address for Giordano and the Shell Websites provided by the registrar for the domain names corresponding to the Shell Websites is 1730 62nd Street, Brooklyn, NY 11204.

21. The Shell Websites make frequent use of and display the Infringing Marks New York Shell Exchange and nyse.

22. The Shell Websites describe Defendants' goods and services in the following ways (among others): (a) "Buyer, meet Seller. Seller, meet Buyer"; (b) "Direct communication Say goodbye to brokers and middle-men. Communicate directly with prospective buyers and sellers"; (c) "One place for all OTC Whether you're looking to buy or sell, your best deal can be found here. It's about time"; (d) "Search and discover Our database is updated in real-time, connecting you faster with prospective buyers and sellers"; (e) "We provide the necessary resources to find, buy, or sell, publicly traded companies"; (f) "New York Shell Exchange buyers and sellers of publicly traded companies always interact directly with one another"; (g) "Transactions will be easier to negotiate, quicker to close, and reflect "real market" value which can save you thousands of dollars."

23. Upon information and belief, Defendants Giordano and Hayde chose the Infringing Marks, decided to use the Infringing Marks in connection with the Shell Websites offers and promotion of exchange services, and wrote or authorized the writing of the descriptions of services alleged in paragraph 23 hereof.

24. Upon information and belief, Defendants own and operate a Twitter® account available at https://twitter.com/nyshellexchange (the "Shell Account"). A true and correct copy of webpages from the Shell Account are attached hereto as Exhibit C.

25. The Twitter® name for the Shell Account is @nyshellexchange.

26. Upon information and belief, Defendants started the Shell Account in December 2012.

27. Upon information and belief, the Shell Account has at least 160 followers.

28. Upon information and belief, the Shell Account has over 170 tweets.

29. The Shell Account uses and displays the following Infringing Marks: (a) NY Shell Exchange; (b) newyorkshellexchange.com; (c) NYSE; and (d) New York Shell Exchange.

30. The Shell Account has the following descriptions either on the Shell Account webpage or tweeted from @nyshellexchange: (a) "OTCBB For Sale NYSE Recent Listings | New York Shell Exchange http://newyorkshellexchange.com/listings/ via @nyshellexchange"; (b) "B2B Platform Post-Launch Seeks Funding | New York Shell Exchange"; (c) "Recently Launched Television Network Seeks Financing | New York Shell Exchange"; (d) "Find Funding | New York Shell Exchange"; (e) "Internet Start-up Seeks Bridge Financing | New York Shell Exchange"; (e) "Whether you're looking to buy or sell a publicly traded company, you'll find your best deal here!"; (f) "SEC Charges Four Penny Stock Purchasers with Fraud."

31. Upon information and belief, Defendants Giordano and Hayde wrote or authorized the above descriptions to appear on the Shell Account.

32. Upon information and belief, Defendants own and operate an account on LinkedIn® available at https://www.linkedin.com/company/new-york-shell-exchange (the "Shell

Profile"). A true and correct copy of webpages from the Shell Profile are attached hereto as Exhibit D.

33. Upon information and belief, Defendants created the Shell Profile in 2012.

34. Upon information and belief, the Shell Profile has 29 followers.

35. The Shell Profile uses and displays the following: (a) nyse; (b) newyorkshellexchange.com; and (c) New York Shell Exchange.

36. The Shell Profile has the following descriptions on its webpage: (a) "New York Shell Exchange is where buyers and sellers of public companies communicate directly with one another thereby saving both parties involved in a transaction valuable time and money"; (b) "All public companies on NYSE have been listed by their principal owners and/or executive officers"; (c) "NYSE registered members are mostly investment bankers, attorneys, accountants, fund managers, and other finance professionals"; and (d) "NYSE is where serious sellers, meet serious buyers."

37. The Shell Profile webpage categorizes the Shell Exchange as within the Investment Banking Industry.

38. Upon information and belief, Defendants Giordano and Hayde wrote or authorized the above descriptions and categorization to appear on the Shell Profile.

39. Upon information and belief, Defendants own and operate a group on LinkedIn® available at https://www.linkedin.com/grp/home?gid=4683673 (the "Shell Group"). A true and correct copy of webpages from the Shell Group are attached hereto as Exhibit E.

40. Upon information and belief, Defendants created the Shell Group on or about October 23, 2012.

41. Upon information and belief, the Shell Group has 147 members.

42. The Shell Group uses and displays the following Infringing Marks: (a) New York Shell Exchange; and (b) newyorkshellexchange.com.

43. The Shell Group has the following descriptions on its webpage: (a) "OTC PINK FOR SALE! OTC Pink current in all filings for sale. No Stop sign. DTC. Not a 'Shell' Asking $135k For contact info please visit: www.newyorkshellexchange.com"; (b) "Another new listing has just been posted to the New York Shell Exchange! OTCBB Not a Shell"; (c) "A New Listing has just been posted to the New York Shell Exchange! Please click on the link below for details and contact info. OTC Pink Sheet. Not a shell"; and (d) "A New Listing Has Just Been Added To The New York Shell Exchange! OTCBB 99% Delivery. $275k Includes Free Trading Shares. Not a Shell."

44. Upon information and belief, Defendant Giordano posted the above descriptions from his personal LinkedIn® account.

45. Upon information and belief, Defendants Giordano and Hayde wrote or authorized the above descriptions to appear on the Shell Group.

46. The Shell Group displays financial content postings from group members regarding various financial topics such as penny stocks, Securities and Exchange Commission rules and regulations, and public stock offerings.

**<u>Defendants' Failure to Remove the Infringing Marks after Notice from NYSE Group</u>**

47. On or about October 21, 2013, NYSE Group, through its counsel, sent a letter to Defendant Giordano at the public address of Shell Exchange regarding Defendants' wrongful and illegal use of the Infringing Marks and demanding that such use cease immediately. A true and correct copy of the letter is attached hereto as Exhibit F.

48. On June 24, 2015, counsel for the NYSE Group sent another letter to Defendant Giordano at the public address of Shell Exchange. This letter again raised the Defendants' wrongful and illegal use of the Infringing Marks and renewed the demand that Defendants immediately cease use of the Infringing Marks. A true and correct copy of the letter is attached hereto as Exhibit G.

49. On July 15, 2015, Defendant Giordano responded to counsel for the NYSE Group via letter. A true and correct copy of the letter is attached hereto as Exhibit H.

50. In the letter, Defendant Giordano stated that his response came after he "had the opportunity to discuss this matter with [his] business partner, William Hayde." Defendant Giordano referenced NYSE Group's October 21, 2013 letter, and claimed that the issues raised in that letter were resolved because Defendants had allegedly removed the NYSE mark from the Shell Websites. Defendant Giordano also stated that Defendants would "entertain an offer from Intercontinental Exchange for the purchase and transfer of [their] domain name."

51. On July 17, 2015, counsel for the NYSE Group responded to Defendant Giordano via e-mail. A true and correct copy of the e-mail is attached hereto as Exhibit I. Counsel for the NYSE Group informed Defendant Giordano that NYSE Group "has no interest in purchasing the domain or in negotiating this matter further." Counsel for the NYSE Group also informed Defendant Giordano that the infringing "NYSE" mark continued to be used on the Shell Websites.

52. On July 20, 2015, Defendant Giordano responded to counsel for the NYSE Group via e-mail. A true and correct copy of the e-mail is attached hereto as Exhibit J. Defendant stated only the "NYSE" mark would be removed from the Shell Websites. Giordano further stated that the Defendants would not "relinquish ownership of our domain name . . . ."

53. Notwithstanding this assertion, Defendants have not removed the infringing "NYSE" mark from the Shell Websites as of the date of this Complaint.

**Defendants' Direct and Secondary Liability**

54. Upon information and belief, Defendant Shell Exchange is a business operating in Brooklyn, New York. NYSE Group does not know if Shell Exchange is a separate legal entity.

55. Upon information and belief, at all times relevant to this Complaint, Defendants Giordano and Hayde have been the sole owners and operators of Shell Exchange.

56. Upon information and belief, at all times relevant to this Complaint, Defendants Giordano and Hayde have managed and directed Shell Exchange, and have personally sold or offered for sale the services of Shell Exchange, including the services at issue in this lawsuit, and have personally chosen and used the Infringing Marks to advertise, promote, market and sell the services of Shell Change.

57. Upon information and belief, to the extent that Shell Exchange is a separate legal entity, Defendants Giordano and Hayde had, and continue to have, a direct financial interest in Shell Exchange's infringing acts alleged above, and had and have the right or ability to supervise and control those infringing acts.

58. Upon information and belief, to the extent that Shell Exchange is a separate legal entity, Defendants Giordano and Hayde are the sole and dominant influences in Shell Exchange, and directly control the acts of Shell Exchange without regard for the latter's legal separateness. They are thus the alter egos of Shell Exchange and are liable for the wrongful and illegal acts of Shell Exchange as alleged herein.

59. Defendants' infringing use of the Infringing Marks is willful and in bad faith given Defendants' actual and/or constructive knowledge of NYSE Group's exclusive rights in the

NYSE Marks by reason of, without limitation, NYSE Group's longstanding federal trademark Registrations for the NYSE Marks, NYSE Group's long-standing extensive and exclusive use of the NYSE Marks, and the communications between NYSE Group's counsel and the Defendants referenced above, following which Defendants continued to use the Infringing Marks.

60. Defendants' continued use of the Infringing Marks is without any permission or license from NYSE Group, is unfair, confuses, misleads and deceives or is likely to confuse, mislead or deceive the public, dilutes the unique nature of the NYSE Marks through tarnishment or blurring, and has caused, and until enjoined, will continue to cause irreparable injury to NYSE Group's goodwill, identity, and reputation, for which NYSE Group has no adequate remedy at law.

## FIRST CLAIM FOR RELIEF
**Trademark and Service Mark Infringement of U.S. Trademark Registrations Nos. 909,350, 924,870, and 1,231,337**
**(15 U.S.C. § 1114, Lanham Act § 32)**

61. NYSE Group repeats and incorporates by reference the previous paragraphs of this Complaint as if set forth in full herein.

62. NYSE Group is the sole owner of all right, title and interest in and to the NYSE Marks and their valid and incontestable Registrations, which have been duly registered with the United States Patent and Trademark Office.

63. The NYSE Marks are distinctive and serve as indicators of the source of NYSE Group's services.

64. Defendants' use of the Infringing Marks, without consent of the NYSE Group, as alleged above, is confusingly similar to NYSE Group's use of the NYSE Marks, and is likely to cause confusion, mistake, or to deceive, in violation of 15 U.S.C. § 1114(1).

65. Defendants' infringing use of the Infringing Marks, without consent of the NYSE Group, as alleged above, is and continues to be willful and intentional infringement of NYSE Group's Registrations and the NYSE Marks. Pursuant to 15 U.S.C. § 1117(a), NYSE is entitled to recover its reasonable attorneys' fees incurred in this action.

66. Defendants profited, and continue to profit, from their acts of infringement. In consequence, NYSE Group is entitled to recover Defendants' profits arising from the infringement and three times the actual damages sustained by NYSE Group from said infringement, as well as the costs of this action.

67. Defendants' violations of 15 U.S.C. § 1114(1) have caused, and, unless enjoined by this Court, will continue to cause irreparable injury to NYSE Group, which is not fully compensable in monetary damages. NYSE Group is therefore entitled to a preliminary and permanent injunction enjoining and restraining Defendants from use of the Infringing Marks or any other mark that is confusingly similar to the NYSE Marks.

68. NYSE Group has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
**Federal Unfair Competition**
**(15 U.S.C. § 1125(a), Lanham Act § 43(a))**

69. NYSE Group repeats and incorporates by reference the previous paragraphs of this Complaint as if set forth in full herein.

70. Defendants' use of the Infringing Marks, and any other colorable imitations of the NYSE Marks, is a use in commerce of a word, term, name, symbol, or device, or combination thereof, and a false designation of origin, which is likely to cause confusion or mistake in the public mind or to deceive the public, as to the affiliation, connection or association of Shell

Exchange with NYSE Group, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by NYSE Group.

71. The aforementioned uses by Defendants constitute willful and intentional unfair competition in violation of 15 U.S.C. § 1125(a). Pursuant to 15 U.S.C. § 1117(a), NYSE is entitled to recover Defendants' profits and three times the actual damages sustained by NYSE Group from said violations, the costs of this action, and its reasonable attorney's fees.

72. In addition, Defendants' violations of 15 U.S.C. § 1125(a) have caused and, unless enjoined by this Court, will continue to cause irreparable injury to NYSE Group's goodwill, business identity, and reputation. NYSE Group is therefore entitled to a preliminary and permanent injunction enjoining and restraining Defendants from use of the NYSE Marks or any other mark that is confusingly similar to the NYSE Marks.

73. NYSE Group has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF
### Federal Trademark Dilution
### (15 U.S.C. § 1125(c), Lanham Act § 43(c))

74. NYSE Group repeats and incorporates by reference the previous paragraphs of this Complaint as if set forth in full herein.

75. The NYSE Marks have achieved widespread fame and prominence, as alleged above, and are generally recognized by U.S. consumers as a designation of origin for the NYSE Group and its exchange services. The NYSE Marks became famous many years before Defendants first used the Infringing Marks in connection with exchange services The NYSE Marks are therefore famous within the meaning of 15 U.S.C. § 1125(c).

76. Defendants' use of the Infringing Marks, as alleged above, is likely to cause dilution of the famous NYSE Marks by blurring and/or tarnishment in violation of the Federal Trademark Dilution Act, codified at 15 U.S.C. § 1125(c).

77. Defendants' violations of the Federal Trademark Dilution Act have been, and continue to be, knowing, deliberate and willful.

78. Defendants' violations of the Federal Trademark Dilution Act have caused, and will continue to cause, great and irreparable injury to the NYSE Group. Unless such acts are restrained by this Court, Defendants' acts will continue, and the NYSE Group will continue to suffer great and irreparable injury.

79. The NYSE Group has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**
**Federal Cybersquatting**
**(15 U.S.C. § 1125(d), Lanham Act § 43(d))**

80. NYSE Group repeats and incorporates by reference the previous paragraphs of this Complaint as if set forth in full herein.

81. Defendants do not have any valid trademark or other intellectual property rights in the Infringing Marks or the domain names www.newyorkshellexchange.com or www.nyshellexchange.com, (the "Shell Domains").

82. Upon information and belief, Defendants have registered the Shell Domains, which are confusingly similar to the NYSE Marks.

83. Defendants have offered to sell the Shell Domains to NYSE Group for financial gain.

84. Defendants' registration and use of the domain names of the Shell Domains is a violation of 15 U.S.C. § 1125(d), in that Defendants (a) had and have a bad faith intention to

profit from the registered NYSE Marks through use of the Infringing Marks, (b) in furtherance of this intention, have registered and used the Shell Domains, whose domain names are identical or confusingly similar to the NYSE Marks, and which are dilutive of the NYSE Marks.

85. Unless enjoined from further violations of 15 U.S.C. § 1125(d), Defendants, and those acting in concert with them, will continue to violate that statute, and may sell one or more of the domain names of the Shell Domains to a third party, such as NYSE Group's competitors, further damaging NYSE Group and violating NYSE Group's trademark rights in the NYSE Marks.

## FIFTH CLAIM FOR RELIEF
## Trademark Infringement and Unfair Competition under New York Common Law

86. NYSE Group repeats and incorporates by reference the previous paragraphs of this Complaint as if set forth in full herein.

87. NYSE Group owns valuable, current goodwill constituting property or a commercial advantage in the NYSE Marks, which has arisen and exists through public association in the minds of consumers between the NYSE Marks and the services offered by NYSE Group, which is capable of misappropriation by Defendants.

88. Defendants' adoption and use of the Infringing Marks, as alleged above, constitutes deliberate and bad faith copying of NYSE Group's NYSE Marks, which misappropriates NYSE Group's goodwill in the NYSE Marks, and is likely to confuse, mislead, or deceive the relevant consuming public into believing that Defendants' products and services are association with or related to NYSE Group.

89. As a consequence of Defendants' wrongful acts as alleged above, NYSE Group has been and is likely to continue to be substantially injured in its business, including injury to its goodwill and reputation, and loss of revenues and profits.

90. In misappropriating NYSE Group's goodwill in the NYSE Marks and competing unfairly with NYSE Group, Defendants have acted willfully, in bad faith, maliciously, wantonly, and without due regard for NYSE Group's rights.

91. NYSE Group is entitled to recover compensatory damages and punitive damages, in an amount to be determined at trial, for Defendants' acts of unfair competition.

92. Money damages alone cannot fully compensate NYSE Group for Defendants' misconduct. Unless Defendants are enjoined by this Court, they will continue to engage in common law trademark infringement and unfair competition as alleged above, thereby causing irreparable injury to NYSE Group and its business entity, goodwill, and reputation. NYSE Group is therefore entitled to a preliminary and permanent injunction restraining and enjoining Defendants from using the Infringing Mark and any NYSE Mark or colorable imitation thereof, alone or in combination with any other words or design, domain name, or any other term, in connection with the advertising, promotion, marketing, offering for sale or sale of any exchange or exchange-like services.

93. NYSE Group has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF
**Injury To Business Reputation and Dilution**
**(N.Y. Gen. Bus. Law § 360-*l*)**

94. NYSE Group repeats and incorporates by reference the previous paragraphs of this Complaint as if set forth in full herein.

95. As a result of NYSE Group's extensive and continuous use of the NYSE Marks, and the strong nature of those marks, those marks have become distinctive and famous.

96. By its use of the Infringing Marks as set forth above, Defendants have injured the business reputation of the NYSE Group and diluted the distinctive quality of the NYSE Marks, in violation of New York General Business Law § 360-*l*.

97. Defendants' use of the Infringing Marks was and is done willfully and with the intention to trade on NYSE Group's reputation and/or to cause dilution of the NYSE Marks.

98. Defendants' wrongful acts as set forth above, unless restrained by this Court, are likely to cause both dilution by tarnishment and dilution by blurring of the NYSE Marks, to NYSE Group's irreparable injury.

99. NYSE has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, NYSE respectfully requests judgment against Defendants as follows:

A. Adjudging and determining that Defendants:

a. Willfully infringed the NYSE Marks under 15 U.S.C. § 1114;

b. Willfully committed and continues to willfully commit acts of false designation of origin, false or misleading description of fact, or false or misleading representation in violation of NYSE Group's rights under 15 U.S.C. § 1125(a);

c. Willfully diluted the NYSE Marks under 15 U.S.C. § 1125(c);

d. Committed cybersquatting under 15 U.S.C. § 1125(d) through use of the Shell Domains which incorporate one or more Infringing Marks;

e. Infringed and diluted NYSE Group's trademark rights in violation of New York statutory and common law;

f. Engaged in unfair competition in violation of New York statutory and common law; and

g. Violated New York General Business Law § 360-*l*.

B. Ordering that Defendants, their officers, directors, partners, agents, subcontractors, servants, employees, representatives, franchisees, licensees, subsidiaries, parents, and related companies or entities, and all others acting in concert or participation with Defendants now or thereafter, refrain from:

a. Using the Infringing Marks, the NYSE Marks, or any variation or colorable imitation of the NYSE Marks;

b. Using the domain names of the Shell Domains or any domain name which contains any NYSE Mark or any variation or colorable imitation thereof;

c. Representing in any manner that Shell Exchange is associated with, sponsored by, affiliated with, or in any way related to NYSE Group or that the products or services of Shell Exchange are sponsored by, endorsed, authorized or approved by NYSE Group; and

d. Unfairly competing with NYSE Group by using any name or trademark identical to or confusingly similar to any of the NYSE Marks.

C. Ordering that Defendants:

a. Recall and destroy any advertising or promotional material bearing the Infringing Marks or any other mark identical to or confusingly similar to the NYSE Marks in any and all media including, but not limited to, letterhead, business cards, newspapers, flyers, coupons, promotions, signs, the Internet, websites, mass mailings, all at Defendants' cost;

b. Take affirmative steps to dispel such false impressions that have been created by Defendants' uses of the NYSE Marks, including, but not limited to, corrective advertising directed to the trade and consumers;

c. Provide an accounting to determine all gains, profits, savings and advantages obtained by Defendants as a result of their wrongful actions; and

d. Surrender the Shell Domains to NYSE Group and take all steps necessary to formally transfer the domain names thereof to NYSE Group.

D. Awarding NYSE Group:

a. Its damages and Defendants' profits pursuant to 15 U.S.C. § 1117(a), trebled pursuant to 15 U.S.C. § 1117(b), in an amount to be determined at trial, or, at NYSE Group's election at any time before final judgment is rendered, statutory damages pursuant to 15 U.S.C. § 1117(d);

b. Statutory damages in accordance with 15 U.S.C. § 1117 in an amount of no less than $1,000 and no more than $100,000 per Shell Domain registered by Defendants in violation of 15. U.S.C. § 1125(d);

c. Compensatory and punitive damages for Defendants' violation of New York statutory and common law, in an amount to be determined at trial;

d. Restitution to NYSE Group of all gains, profits, savings, and advantages obtained by Defendants as a result of their wrongful actions;

e. All of NYSE Group's costs and reasonable attorneys' fees incurred in investigating and prosecuting this matter; and

f. Such other and further relief as this Court shall deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury for all causes and issues so triable.

Dated: New York, New York.
August 17, 2015

Respectfully submitted,

**NYSE GROUP, INC.**

By: ______________________________

Andrew L. Deutsch (AD 5782)
**DLA Piper LLP (US)**
1251 Avenue of the Americas
New York, New York 10020-1104
212.335.4500

Paul A. Taufer (*pro hac vice* pending)
Michael L. Burns (*pro hac vice* pending)
**DLA Piper LLP (US)**
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, Pennsylvania 19103-7300
215.656.3300

*Attorneys for Plaintiff*
*NYSE Group, Inc.*